# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

| | |
|---|---|
| **AKEBONO BRAKE CORPORATION** | )<br>)<br>) |
| Plaintiff, | )<br>)   Case No. _____<br>) |
| v. | )<br>) |
| **WAUPACA FOUNDRY, INC.** | )<br>) |
| Defendant. | |

## COMPLAINT AND JURY DEMAND

Plaintiff Akebono Brake Corporation ("Akebono"), by its attorneys, Hickey Hauck Bishoff Jeffers & Seabolt, PLLC, states as follows for its Complaint against Defendant Waupaca Foundry, Inc. ("Waupaca"):

## INTRODUCTION

1. Akebono, as buyer, and Waupaca, as seller, are parties to a contract for the sale of iron castings used in automotive parts. The parties' contract is memorialized by several documents dating back to 2014—including Purchase Orders, Terms and Conditions, Releases, and a 2017 Settlement Agreement—pursuant to which Waupaca agreed to supply unique automotive parts to Akebono at an agreed upon price.

2. Notwithstanding these clear contractual rights and obligations, Waupaca recently threatened to stop shipping under the parties' contract if Akebono did not agree to pay unilaterally-imposed increased prices that far exceed those to which the parties agreed in the contract. In doing so, Waupaca materially breached and/or anticipatorily repudiated its contract with Akebono.

3. Without Waupaca's supply of parts, Akebono would have been forced to stop production of its own parts that are then supplied to automakers, which would also have been forced to stop production of automobiles. This interruption in supply would have caused an enormous ripple effect on Akebono, its employees, its customers, and the public at large.

4. Thus, Akebono agreed to pay Waupaca's unilateral price increase under protest and with full reservation of rights in accordance with MCL § 440.1308 and other applicable law. Akebono brings this suit to recover the unilateral price increase imposed by Waupaca and to compel Waupaca to specifically perform its contractual obligations in accordance with the parties' agreement.

**PARTIES, JURISDICTION, VENUE**

5. At all times relevant herein, Akebono was and continues to be a corporation organized under the laws of the State of Michigan with its principal place of business in Farmington Hills, Michigan.

6. At all times relevant herein, Waupaca was and continues to be a corporation organized under the laws of the State of Wisconsin with its principal place in Waupaca, Wisconsin. Waupaca's registered agent for service of process in Michigan is The Corporation Company, 40600 Ann Arbor Road East, Suite 201, Plymouth, Michigan 48170.

7. At all times relevant to this Complaint, Waupaca, either directly or through its subsidiaries, affiliates and other related parties, regularly conducted business within the State of Michigan, County of Oakland.

8. Personal jurisdiction exists over Waupaca in Michigan because the parties have contractually consented to the jurisdiction and venue of this Court in the Supply Agreement and Settlement Agreement, defined and described below. Moreover, personal jurisdiction exists over Waupaca due to the general and specific contacts it maintains in Michigan. Waupaca maintains those contacts presently and did so at all times material to this action.

9. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a), as this case involves citizens of different states and the amount in controversy exceeds $75,000.00.

10. Venue is proper in the Eastern District of Michigan pursuant to 28 U.S.C. § 1391(b)(2) because the parties have contractually consented to the jurisdiction and venue of this Court in the Supply Agreement and Settlement

Agreement, defined and described below. Moreover, venue is proper in this District because a substantial part of the events and/or omissions giving rise to the Akebono's claims emanated from activities within this jurisdiction and Waupaca conducts substantial business within this Judicial District.

## GENERAL ALLEGATIONS

### The Parties' Relationship

11. For over 30 years, Akebono has developed, manufactured, marketed and sold braking and noise, vibration, and harshness solutions (the "Products") to leading original equipment manufacturers ("OEMs"), tier-one brake suppliers, and the automotive aftermarket in the United States.

12. Waupaca is a foundry with several North American locations that specializes in the production of iron castings for various uses in the world-wide transportation, construction, agriculture, and industrial markets.

13. Waupaca is a large supplier of iron castings to Akebono, including critically important brake castings utilized on various OEM vehicle programs (the "Goods"). Throughout the course of the parties' supply relationship, more than $1 billion of revenue has flowed from Akebono to Waupaca for the supply of Goods.

14. Waupaca is Akebono's sole source supplier for the Goods, which are unique and essential components of Akebono's Products that cannot be readily

obtained from another supplier. Akebono cannot re-source the Goods to another supplier on short notice.

15. All of the Goods are custom-made using purpose-made tools and are specifically manufactured by Waupaca to meet Akebono's engineering specifications and requirements.

16. Akebono, like other tier-one automotive suppliers, utilizes a "just-in-time" inventory delivery system, under which Akebono does not maintain a significant inventory of the Goods, but, instead, relies on frequent shipments of the Goods by Waupaca.

17. Without sufficient quantities of the Goods, Akebono cannot maintain production of the Products at its assembly facilities.

18. An alternate source of supply of the Goods is not readily available because, among other things, Waupaca manufactures the Goods using specially manufactured and unique tooling, and a proprietary process.

**The Supply Agreement
(Purchase Orders, Terms and Conditions, and Releases)**

19. Akebono and Waupaca entered into various purchase orders for the Goods (the "Purchase Orders," redacted versions of which are collectively attached as **Exhibit 1**), pursuant to which Akebono agreed to purchase and Waupaca agreed to supply the Goods at fixed prices set forth in the Purchase Orders.

20. The Purchase Orders expressly incorporate the Purchase Order Terms and Conditions (the "Terms and Conditions," attached as **Exhibit 2**) in their entirety. *See, e.g.*, Ex. 1, p. 1. Pursuant to the Terms and Conditions, Waupaca agreed to manufacture and supply Akebono with the Goods, which are unique and critical components in Akebono's Products.

21. In addition, Akebono issues periodic releases as contemplated in the Terms and Conditions to Waupaca (the "Releases" ). These Releases specify the quantities of Goods to be delivered by Waupaca to Akebono on particular dates at particular times.

22. Collectively, the Purchase Orders, Terms and Conditions, and Releases constitute the "Supply Agreement."

## The Supply Agreement Terms

23. Pursuant to the Supply Agreement, Waupaca is required to manufacture and deliver the Goods to Akebono in a timely manner and for the agreed upon price.

24. Waupaca must deliver the Goods to Akebono for the life of the vehicle platform(s) and/or program(s). Specifically, Paragraph 13 of Attachment A to the Terms and Conditions provides:

> Seller [Waupaca] acknowledges that the continuous availability of Goods in accordance with the Order is critical to Buyer's [Akebono's] ability to supply product to its customer(s) and as such, Seller [Waupaca] agrees that the Order and ***Seller's [Waupaca's] obligation to supply Goods thereunder shall remain in effect for the life of the vehicle platform(s) and/or program(s) for which the Goods are***

6

*supplied*, including any extensions thereof, unless terminated hereunder.

Ex. 2, p. 7, § 15 (emphasis added).

25. In addition, Waupaca is obligated to sell Goods to Buyer to "fulfill Buyer's [Akebono's] past model service and replacement part requirements" *beyond* the life of the program. Ex. 2, p. 7, § 15.

26. The Supply Agreement is a requirements contract under which Waupaca agreed to supply Akebono's requirements for the Goods. Waupaca must deliver the Goods in the quantities and at the times identified by Akebono in the Releases issued by Akebono to Waupaca from time to time. *See* Ex. 2, p. 3, § 4 ("[T]his Order is a requirements contract under which Buyer [Akebono] shall purchase a minimum of 80% and a maximum of 100% of Buyer's [Akebono's] requirements, as evidenced by written releases issued by Buyer [Akebono] from time to time.").

27. The Supply Agreement—specifically the Terms and Conditions—defines "Order" as Akebono's "purchase orders and the associated releases, delivery schedules and other purchasing documents transmitted to" Waupaca. Ex. 2, p. 2, § 1.

28. Time is of the essence under the Supply Agreement. Ex. 2, p. 3, § 4 ("Time is of the essence with respect to performance of Seller's [Waupaca's] obligations under the Order."). Time is also of the essence due to the just-in-time

7

nature of the supply chain in the automotive industry. In other words, as soon as Akebono receives a shipment of Goods from Waupaca, Akebono incorporates the Goods into its automotive braking systems. If there is any delay or interruption in Waupaca's shipments to Akebono, Akebono's manufacture of its automotive braking systems will be significantly delayed or interrupted, which will cause delay or interruption in Akebono's production line.

29. The Supply Agreement provides an express acknowledgment that money damages are not a sufficient remedy for Waupaca's breach and that Akebono is entitled to specific performance and injunctive relief to enforce the Contract. Specifically, Paragraph 14 of Attachment A to the Terms and Conditions provides:

> Seller [Waupaca] further acknowledges and agrees that ***money damages would not be a sufficient remedy for any actual, anticipatory or threatened breach*** of the Order by Seller [Waupaca] with respect to its delivery of Goods to Buyer [Akebono] and that, in addition to all other rights and remedies which Buyer [Akebono] may have, ***Buyer [Akebono] shall be entitled to specific performance and injunctive or other equitable relief as a remedy for any such breach***.

Ex. 2, p. 6, § 13 (emphasis added).

30. Waupaca may only terminate the Supply Agreement if Akebono materially defaults under the terms of the Supply Agreement. Ex. 2, p. 14, § 29.

31. In the event that Waupaca fails to comply with any of the terms and conditions of the Supply Agreement, Waupaca is obligated to reimburse Akebono for attorneys' and other professional fees and court costs incurred by Akebono in

connection with the failure to comply or in connection with any action by Akebono to enforce its rights under the Supply Agreement. Ex. 2, p. 13, §§ 26–27.

## The Settlement Agreement

32. In 2017, Akebono and Waupaca engaged in litigation against each other arising out of a dispute over the purchase and supply of certain iron castings, many of which were the subject of the Purchase Orders referenced above and attached hereto collectively as Exhibit 1.

33. On or about June 7, 2017, Akebono and Waupaca entered into a Confidential Settlement Agreement and Mutual Release, pursuant to which Waupaca agreed to provide particular price reductions for certain Goods.[1]

34. Pursuant to the Settlement Agreement, Waupaca agreed that the price reductions reflected therein "are firm through the end of current program life with the exception of future engineering changes or value-add and/or value engineering proposals." Settlement Agreement, pp. 2, 11–12.

35. Akebono provided payment to Waupaca for the Goods in accordance with the agreed upon prices set forth in the Settlement Agreement.

---

[1] Due to the confidential nature of the parties' settlement and the potential sensitivity of the pricing terms set forth in it, the Confidential Settlement Agreement is not filed as an Exhibit to this Complaint.

**Waupaca's Threats to Stop Delivery of the Goods In Breach
of the Supply Agreement and the Settlement Agreement**

36. On June 3, 2021, Waupaca notified Akebono in a letter that it would be raising base prices for the Goods because Waupaca was closing one of its facilities, Plant 6, and moving production to a different facility (the "June Notice," attached as **Exhibit 3**).

37. The June Notice provided Akebono with an ultimatum: Akebono could either "support these price changes to take effect on August 1, 2021" or "execute an exit strategy with production ending no later than December 31, 2021." Ex. 4, p. 1.

38. The prices that Waupaca sought to put into effect on August 1, 2021 without Akebono's consent are higher than the previously agreed upon prices included in the Purchase Orders and the Settlement Agreement.

39. Waupaca threatened Akebono with this ultimatum even though the life of the vehicle platform(s) and/or program(s) has not ended.

40. In response to the June Notice, Akebono, through counsel, requested that Waupaca provide Akebono with the contractual authority that would allow Waupaca to unilaterally raise prices. Akebono told Waupaca that it was unwilling to agree to the price changes and to execute an exit strategy by December 31, 2021, and, instead, would continue to comply with the terms of the Supply Agreement and the Settlement Agreement.

41. On August 11, 2021, Waupaca notified Akebono in a letter that it would stop production of the Goods and would not accept any Releases after November 1, 2021 (the "August Notice," attached as **Exhibit 4**).

42. The August Notice stated that Waupaca would continue to ship the Goods from November 1, 2021 to December 31, 2021, but only if Akebono agreed to the higher prices set forth in the June Notice and "subject to release quantities being not unreasonably disproportionate to historical releases." Ex. 4, p. 2.

43. Waupaca stated that, after December 31, 2021, it would not ship the Goods to Akebono.

44. In response to the August Notice, Akebono, through counsel, again requested that Waupaca provide Akebono with any contractual or legal authority to support its position.

45. Waupaca has unlawfully demanded a unilateral modification to the Supply Agreement and the Settlement Agreement that would require Akebono to pay increased prices for the Goods supplied by Waupaca to Akebono under those agreements.

46. Despite Waupaca's agreement to deliver the Goods to Akebono for the life of the vehicle platform(s) and/or program(s), Waupaca has unlawfully and unilaterally terminated and/or anticipatorily repudiated the Supply Agreement and the Settlement Agreement.

47. Despite this termination and/or repudiation, Akebono has agreed under protest to Waupaca's demand for a price increase in accordance with MCL § 440.1308 and all other applicable law (the "Notice of Payment Under Protest," attached as **Exhibit 5**).

48. Nevertheless, Akebono still demands that Waupaca honor its contractual obligations to deliver the Goods to Akebono's shipping releases at the prices set forth in the Supply Agreement and the Settlement Agreement.

### Akebono's Damages

49. Waupaca's unilateral price changes have increased and will further increase Akebono's costs by more than $1 million for 2022.

50. In addition, if Waupaca stopped producing and delivering the Goods, Akebono would need many months to find an alternative supplier for the Goods that had sufficient capacity, to determine that supplier's production capability, quality control procedures, and financial viability, and to complete the pre-production approval process.

51. The consequences of a supply interruption from Waupaca would result in millions of dollars of monetary damages to Akebono. In addition, a shutdown would immeasurably and irreparably harm and damage Akebono's relationship with its customers and would permanently damage Akebono's goodwill and reputation in the automotive industry.

52. The lost production would also potentially force Akebono to idle plants and lay off workers, which would negatively impact the automotive industry and the local economies. Indeed, if Waupaca stops producing and delivering the Goods, Akebono's manufacturing facilities, including but not limited to its facility in Elizabethtown, Kentucky, which employs approximately 550 people, would be impacted and potentially forced to close.

53. Waupaca, as a sophisticated participant in the automotive industry, is well aware that its failure to ship the Goods as required under the Supply Agreement and the Settlement Agreement would cause immediate and irreparable harm to Akebono and its customer.

## COUNT I – BREACH OF CONTRACT

54. Akebono hereby incorporates the foregoing paragraphs of the Complaint as if fully set forth herein.

55. The Supply Agreement and the Settlement Agreement constitute a valid, enforceable, and mutually binding agreement between Akebono and Waupaca.

56. Akebono is in full compliance with its contractual obligations and has otherwise fully performed under the Supply Agreement and the Settlement Agreement, satisfying all conditions precedent (if any) to Waupaca's performance.

57. As set forth above, Waupaca has materially breached and/or repudiated its obligations under the Supply Agreement and the Settlement Agreement by, *inter alia*, failing and refusing to supply the Goods to Akebono under the pricing and other terms set forth in those agreements, indicating that it is unwilling to perform its obligations thereunder, threatening to cease shipments of the Goods to Akebono, and demanding unilateral price increases.

58. Waupaca's conduct constitutes a material breach of its contractual obligations to Akebono.

59. Akebono has sustained and will continue to sustain damages due to Waupaca's failure and refusal to supply the Goods to Akebono according to the pricing and other terms set forth in the Supply Agreement and the Settlement Agreement.

### COUNT II – ANTICIPATORY REPUDIATION

60. Akebono hereby incorporates the foregoing paragraphs of the Complaint as if fully set forth herein.

61. The Supply Agreement and the Settlement Agreement constitute a valid, enforceable, and mutually binding agreement between Akebono and Waupaca.

62. Akebono is in full compliance with its contractual obligations and has otherwise fully performed under the Supply Agreement and the Settlement

Agreement, satisfying all conditions precedent (if any) to Waupaca's performance.

63. Waupaca has anticipatorily repudiated its obligations to continue production and shipments under the Supply Agreement and the Settlement Agreement.

64. Akebono demanded adequate assurances that Waupaca would perform and Waupaca refused to provide same.

65. Akebono has sustained and will continue to sustain damages due to Waupaca's failure and refusal to supply the Goods to Akebono according to the pricing and other terms set forth in the Supply Agreement and the Settlement Agreement.

## COUNT III – SPECIFIC PERFORMANCE

66. Akebono hereby incorporates the foregoing paragraphs of the Complaint as if fully set forth herein.

67. Akebono's supply relationship with Waupaca is governed by the Supply Agreement and the Settlement Agreement.

68. The Supply Agreement and the Settlement Agreement constitute a valid, enforceable, and mutually binding agreement between Akebono and Waupaca.

69. Waupaca's obligations under the Supply Agreement and the Settlement Agreement are unambiguous, ascertainable, and sufficiently explicit to warrant

enforcement.

70. Waupaca has breached and/or anticipatorily repudiated its obligations under the Supply Agreement and the Settlement Agreement by, among other things, failing and refusing to supply the Goods to Akebono under the pricing and other terms set forth in the Contract.

71. Any failure and/or refusal by Waupaca to perform consistent with contractual obligations leaves Akebono without an adequate remedy at law.

72. Akebono is entitled to Waupaca's specific performance of all terms of the Supply Agreement and the Settlement Agreement, including its obligations to provide the Goods as and when required under the pricing and other terms of those agreements.

## COUNT IV – INJUNCTIVE RELIEF

73. Akebono hereby incorporates the foregoing paragraphs of the Complaint as if fully set forth herein.

74. As set forth above, Waupaca has materially breached and/or anticipatorily repudiated its contractual obligations to Akebono under the Supply Agreement and the Settlement Agreement.

75. Legal damages are an inadequate remedy for the substantial injury that will be sustained by Akebono and its customer relationships and customer goodwill

should Akebono experience an interruption or complete shutdown of production due to Waupaca's actions.

76. Additionally, the total scope of economic losses associated with Waupaca's conduct is impossible to quantify.

77. An injunction is necessary and essential in order to prevent irreparable harm.

78. Should an injunction issue, there will be no harm or added obligation imposed upon Waupaca as a result of being compelled to do that which it has previously contracted to do—produce and ship the Goods pursuant to the terms of the Supply Agreement and the Settlement Agreement.

79. Any alleged harm to Waupaca would be outweighed by the significant harm suffered by Akebono if an injunction is not granted.

80. The public interest in enforcing commercial contract, eliminating unfair dealing and business practices, and avoiding the idling of plants and workers, particularly those in the automotive industry, is best served by issuing injunctive relief.

### COUNT V – DECLARATORY RELIEF

81. Akebono hereby incorporates the foregoing paragraphs of the Complaint as if fully set forth herein.

82. Waupaca has clearly conveyed its firm and definite intention to stop supplying the Goods unless Akebono acquiesces to unilateral price increase despite Waupaca's clear contractual obligation to continue to supply the Goods at the agreed upon prices of the Supply Agreement and the Settlement Agreement.

83. Akebono seeks declaratory relief pursuant to the Federal Declaratory Judgments Act, 28 U.S.C. §§ 2201-2202, and Rule 57 of the Federal Rules of Civil Procedure, to determine the extent of the parties' rights and obligations under certain agreements, as an actual or imminent controversy exists between the parties within the meaning of 28 U.S.C. § 2202, which is of sufficient immediacy and reality to warrant declaratory relief.

84. Akebono is entitled to a declaration that Waupaca is obligated to perform all of its obligations and commitments under the terms of the Supply Agreement and the Settlement Agreement, including the obligation to supply the Goods to Akebono at the agreed upon prices and as required by Akebono.

85. Akebono is also entitled to a declaration that any purported modification by Waupaca of the terms specified in the Supply Agreement and the Settlement Agreement is unenforceable.

86. An actual controversy now exists between Akebono and Waupaca, and it is within the jurisdiction of this Court, under Fed. R. Civ. P. 57 and/or 28 U.S.C.

§ 2201, to render a declaratory judgment as to the parties' respective rights under the Supply Agreement and the Settlement Agreement.

## RELIEF REQUESTED

WHEREFORE, Akebono respectfully requests the Court to issue an Order providing for:

A.  A decree of specific performance pursuant to MCL § 440.2716 and/or any other applicable law that requires Waupaca to supply Akebono with the quantity of Goods necessary to satisfy Akebono's requirements as provided under the Supply Agreement and the Settlement Agreement at the prices expressly agreed to by the parties under those agreements;

B.  Permanent injunctive relief under Fed. R. Civ. P. 65 preventing Waupaca from taking any action inconsistent with its supply obligations to Akebono under the Supply Agreement and the Settlement Agreement;

C.  Permanent injunctive relief under Fed. R. Civ. P. 65 requiring Waupaca to supply Akebono with the quantity of Goods necessary to satisfy Akebono's requirements as provided under the Supply Agreement and the Settlement Agreement;

D.  Permanent injunctive relief under Fed. R. Civ. P. 65 requiring Waupaca to adhere to the parties' agreed upon prices under the Supply Agreement and the Settlement Agreement;

E.  A declaratory judgment under Fed. R. Civ. P. 57 and/or 28 U.S.C. § 2201 that Waupaca has anticipatorily and in bad faith repudiated and materially breached its obligations under the Supply Agreement and the Settlement Agreement, which is a valid and enforceable agreement;

F.  An award of money damages in favor of Akebono sufficient to compensate it for all forms of economic loss including, without limitation, actual, consequential and incidental damages, amounts it has been wrongly forced to pay to secure supply, cover damages, lost profits, lost goodwill and other costs incurred as a result of Waupaca's breach of contract;

G.  An award of reasonable attorneys' and other professional fees incurred by Akebono in connection with Waupaca's breach of the Supply Agreement and the Settlement Agreement and Akebono's enforcement of its rights under those agreements, as provided therein and other applicable law;

H.  Such other relief as this Court may deem just, equitable or appropriate under the circumstances.

## DEMAND FOR JURY

Akebono hereby demands a trial by jury of all issues so triable.

Respectfully submitted,

HICKEY HAUCK BISHOFF JEFFERS & SEABOLT, PLLC

*/s/ Scott T. Seabolt*
Scott T. Seabolt (P55890)
706 S. Main
Plymouth, MI 48170
(313) 964-8600
sseabolt@hhbjs.com
*Attorney for Plaintiff*

Dated: January 27, 2022

4819-2250-6747